IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

TRENTON VISINAGE

| | |
|---|---|
| CS ACQUISITION GROUP, LLC<br>d/b/a SADDLEBROOK PARTNERS, LLC<br>681 River Avenue, Suite 2H<br>Lakewood, NJ 08701, | CIVIL ACTION |
| Plaintiff, | NO. |
| v. | |
| BRAHMS HOLDINGS, INC.<br>875 N. Michigan Avenue, Suite 3840<br>Chicago, IL 60611, | **Jury Trial Demanded** |
| and | |
| RICHARD M. PERLMAN<br>875 N. Michigan Avenue, Suite 3840<br>Chicago, IL 60611, | |
| Defendants. | |

## COMPLAINT

Plaintiff, CS Acquisition Group, LLC, d/b/a Saddlebrook Partners, LLC ("CS Acquisition", "Saddlebrook" or "Plaintiff"), by and through its undersigned counsel, hereby complains against the Defendants, as follows:

### I.     Parties, Venue & Jurisdiction

1.     Plaintiff, CS Acquisition, is a New Jersey limited liability company having a business address at 681 River Avenue, Suite 2H, Lakewood, New Jersey 08701.

2. Defendant, Brahms Holdings, Inc. ("Brahms Holdings"), is, upon information and believe, an Illinois corporation with a business address at 875 N. Michigan Avenue, Suite 3840, Chicago, Illinois 60611..

3. Defendant, Richard M. Perlman ("Perlman"), is an adult individual with a business address at 875 N. Michigan Avenue, Suite 3840, Chicago, Illinois 60611.

4. Venue is proper before this Court pursuant to 28 U.S.C. §1391 (b)(2) as it is the proper judicial district where a substantial part of the events and omissions occurred.

5. This Court has jurisdiction over the instant matter pursuant to 28 U.S.C. §1332(a)(1) because plaintiff and defendant are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Personal jurisdiction is proper as Defendants deliberately and purposefully had sufficient contacts with New Jersey by having numerous telephone calls regarding the sale of the subject member interests with a NJ company, negotiated with a NJ company, sent numerous documents, including, *inter alia*, purchase agreements and false financial data to a NJ company within the State of NJ, was aware that Plaintiff was a NJ corporation, and, *inter alia*, sent false statements into NJ with the intention of having a NJ Company rely on said information.

7. Personal Jurisdiction is proper as it does not offend traditional notions of fair play and substantial justice as NJ has an interest in having a NJ corporation

obtain relief as a result of harm by Defendants' fraudulent statements, and because the burden on Defendant is not as great as the burden of Plaintiff in trying this matter in an alternative jurisdiction where the Defendant would have to travel to as well.

## II.  Factual Allegations

8.  In or about May 1, 2014, CS Acquisition, on the one hand, and Brahms Holdings and Perlman, on the other hand, entered into that certain Purchase and Sale Agreement ("Agreement") (attached hereto as Exhibit "A"), for the purchase of the total member interest in an operating entity along with Property located at 9400 Hurstbourne Park Boulevard, Louisville, Kentucky (the "Property"), and this Agreement is in full effect as reinstated on July 22, 2014.  Thereafter, Saddlebrook closed on October 27, 2014 at their office in New Jersey.

9.  The purpose of the Agreement was to sell the totality of member interests of an operating entity involving real estate and an apartment complex for a purchase price as amended of $17,325,000.00.

10.  Paragraph 3(iii) of the Agreement, required Defendants, as seller of the Property, to deliver at closing a "certification by Seller that all representations set forth herein are true and correct as of closing date.  (Exhibit A).

11.  Paragraph 3(vi) of the Agreement, required the Defendants, as Seller of the Property, to deliver to Plaintiff, the Purchaser, a "certification by Seller as to the then current rent roll and tenant security deposit list." (Exhibit A, emphasis added).

12. Paragraph 10(B) of the Agreement provides:

> No representation or warranty contained herein or in any instrument or document provided to Purchaser pursuant to this Agreement contains or will contain any untrue statement of material fact or omits or will omit to state a material fact in order to make the statements herein misleading.

(Exhibit A).

13. Paragraph 10(C) of the Agreement provides that the "Sellers Representations and Warranties survive closing for a period of six (6) months." (Exhibit A).

14. Paragraph 10(D) provides that the prevailing party will receive reasonable attorneys' fees and court costs if there is a breach of the Agreement. (Exhibit A).

15. Paragraph 13 of the Agreement, entitled Default, states:

> . . . . Nothing herein shall limit Purchasers' or the LLC's right to recover its actual damages arising out of any breach of any representation, warranty, or covenants set forth herein.

(Exhibit A)

16. The List of Exhibits to the Agreement at Exhibit A, contained a listing of what the Seller warranted was the current Rent Roll. (Exhibit A, at Exhibit C therein).

17. The Plaintiff signed the Agreement at Closing in their NJ office upon receipt of the closing documents sent via e-mail and mail from the Defendants.

Incorporated therein was an updated Rent Roll which was to reflect the current Rent Roll at time of closing. (Rent Roll, RR1, attached hereto as Exhibit B).

18. Subsequent to closing, the Plaintiff/Purchaser walked the Property to deliver Notice of new owner/management and confirmed at least 10 additional vacancies contrary to the disclosure and warranties of Seller.

19. Upon reviewing the Tenant Files and a walk around inspection, it became clear that the Seller warranted that **at least** 12 apartments were occupied when in fact they were vacant, with some filled with trash and debris.

20. The Tenant Files illustrate a series of misrepresentations including but not limited to:

      a. Numerous tenants moved out of the Property prior to the closing date contrary to the Agreement;

      b. Tenant(s) turned over keys prior to closing;

      c. Apartments marked as occupied were indeed vacant prior to closing.

(See sample of Tenant Filed and Tenant overview at Exhibit C).

21. The difference in monthly income from that the Seller certified at closing is approximately $10,080.00.

22. The loss of value from the reliance of Purchaser on Sellers' Warranties and Certifications is $ 1,728,000.00.

## COUNT I

## BREACH OF CONTRACT/BREACH OF REPRESENTATIONS AND WARRANTIES

23. Plaintiff incorporates herein by reference the averments contained in the preceding paragraphs in their entirety, as if set forth in full.

24. Defendants had a duty to make sure that all provisions of the Agreement, including all Representations and Warranties described therein were true and accurate.

25. Plaintiff relied upon all of the Sellers' Representations, Warranties and Certifications of Seller.

26. As set forth above, Defendants materially breached several salient provisions of the Agreement including, without limitation, Paragraphs 3, 10(A),(B) and (C), due to the fact, *inter alia*, that numerous tenants moved out prior to closing, and **at least** 12 apartments were vacant when they was deemed "occupied" by the Seller.

27. CS Acquisition has suffered substantial monetary damages as a result of the Defendants' breaches of the Agreement, including loss of revenue, loss of Property value, costs of attorneys' fees and court costs, and other incidental and consequential damages.

WHEREFORE, CS Acquisition demands judgment, jointly and severally, against each of the Defendants as follows:

A. For compensatory damages in the amount of $1,542,829.64;

B. For attorneys' fees and costs of suit; and,

C. For such other relief as this Honorable Court deems appropriate.

## COUNT II

### FRAUD

28. Plaintiff incorporates herein by reference the averments contained in the preceding paragraphs in their entirety, as if set forth in full.

29. As set forth in detail above, Defendants, intentionally and recklessly provided false information and intentionally misrepresented that **at least** 12 apartments were occupied on the rent roll list when in fact those statements were false, and the apartments were all vacant.

30. Defendants knew that each of the statements described therein were false at the time they were made to the Purchaser/Plaintiff.

31. Defendants made the false statements described therein in order to induce the Purchaser/Plaintiff to buy the Property.

32. The representations in the Rent Roll, and accompanying certifications as provided by the Seller were inflated and knowingly false at the time they were presented to the Plaintiff/Purchaser.

33. The Tenant Files illustrate that the Seller was placed on notice of tenants vacating the Property prior to closing, and the Seller failed to adjust the financial position of the Property in an effort to further induce the Purchaser.

34. Plaintiff relied upon all of the Sellers' Representations, Warranties and Certifications of the Seller when purchasing the Property

35. CS Acquisition would have demanded a reduction in price for the loss of value due to the misrepresentations of the Defendants had the Seller divulged same.

36. CS Acquisition has suffered substantial monetary damages as a result of the material misrepresentations of the Defendants.

37. From a business perspective, such conduct is so outrageous that it warrants the imposition of treble or punitive damages.

WHEREFORE, CS Acquisition demands judgment against Defendants, as follows:

    A. For compensatory damages in the amount of $1,542,829.64;

    B. For attorneys' fees and costs of suit;

C. For treble or punitive damages in an amount to be determined at trial and,

D. For such other relief as this Honorable Court deems appropriate.

        Respectfully submitted:

        HALPERN & LEVY, P.C.

        By:_____
        Jeffrey S. Downs, Esquire
        1204 Township Line Road
        Drexel Hill, PA 19026
        (610) 668-5454
        jeff@halpernlevy.com

DATED: December 4, 2014