# Exhibit "A"

## PURCHASE AND SALE AGREEMENT

THIS PURCHASE AND SALE AGREEMENT (this "Agreement"), dated as of April ____, 2014, is by and between BRAHMS HOLDINGS, INC., an Illinois corporation (the "Seller"), having an address at 875 North Michigan Avenue, Suite 3840, Chicago, Illinois 60611 and CS ACQUISITION GROUP LLC, a New Jersey limited liability company (the "Purchaser"), having an address at 681 River Ave., Suite 2H, Lakewood New Jersey 08701.

RECITALS:

A.  Seller is, or at the time of Closing shall be, the owner of all of the membership interests ("Membership Interests") in Brahms Associates, L.L.C., an Illinois limited liability company (the "LLC"), which is the owner of the property known as Regent Park Apartments, 9400 Hurstbourne Park Boulevard, Louisville, Kentucky more fully described on Exhibit "A" attached hereto (the "Property").

B. The parties desire that Seller shall cause all of the Membership Interests to be sold to Purchaser and Purchaser shall purchase the Membership Interests, subject to the terms hereof.

C. The parties desire to set forth their agreement in writing.

NOW, THEREFORE, for good and valuable consideration, the sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

1.  SALE OF THE MEMBERSHIP INTERESTS.  Subject to the terms and provisions hereof, Seller agrees to sell the Membership Interests to Purchaser and Purchaser agrees to buy, the Membership Interests.

1

2. <u>PURCHASE PRICE AND CLOSING DATE</u>.

(A)  The purchase price for the Membership Interests is Seventeen Million Seven Hundred and Fifty Thousand ($17,750,000.00) and 00/xx Dollars (the "Purchase Price"), payment of which is to be made as follows:

(i) Within two (2) business days of the signing of this Agreement, Purchaser shall pay to Chicago Title Insurance Company, 10 S. LaSalle Street, Chicago, Illinois (the "Title Company") to hold in escrow on behalf of  Seller the amount of $200,000.00 (the "First Deposit") by wire transfer.

(ii) Within two (2) business days after the expiration or waiver of the Due Diligence Period (as hereinafter defined), Purchaser shall pay to the Title Company to hold in escrow on behalf of Seller an additional sum of $100,000.00 (the "Second Deposit") by wire transfer. The First Deposit and the Second Deposit shall hereinafter be referred to as the "Deposit".  The Deposit together with all interest accrued thereon shall be credited to the Purchase Price at the Closing.

(iii) Purchaser shall assume the current loan from Prudential Mortgage Capital Company, LLC ("Lender") to the LLC in the approximate amount of $14,020,000.00 ("Loan") at Closing.

(iv) The balance of the Purchase Price in the approximate amount of $3,430,000.00 shall be paid by Purchaser at Closing by wire transfer.

(B)  The Closing shall take place as an "escrow closing", i.e. by the day of the Closing, the parties shall remit to the Title Company all necessary and appropriate documents and closing funds in order to complete the Closing. The Closing shall take

2

place on or around fifteen (15) days after Seller obtains Lender approval for the assumption of the Loan (the "Closing Date").  The approval of the assumption of the Loan shall be (i) upon the same terms and conditions as currently exist and;(ii) without any substantive conditions or additional requirements, provided that Richard M. Perlman ("Perlman") shall be released from any personal liability to Lender under the Loan; and (iii) without any fees or charges that are not acceptable to Purchaser.  In conjunction therewith, Purchaser agrees to cause its principals, Chesky Landau and Shlomo Tress, to personally assume the obligations of Perlman under the Loan to the extent required to obtain the release of Perlman.  In the event that Seller is unable to obtain the Lender's consent to the assumption of the Membership Interests by the Purchaser (subject to payment of an assumption fee that does not exceed .5% of the outstanding principal balance of the Loan and  all  fees imposed by Lender as a condition of its approval, all of which are acceptable to Purchaser) as well as the release of the personal liability of Perlman within ninety (90) days of the date hereof, either Seller or Purchaser shall have the right to terminate this Agreement whereupon the Escrow Agent shall refund the Deposit to the Purchaser and the parties shall have no further rights or obligations hereunder.

3. <u>DOCUMENTS TO BE DELIVERED BY SELLER AT CLOSING</u>.  At or prior to the Closing, Seller shall deliver the following:

(i) The consent of the Lender for the assignment of the Membership Interests from the Seller (including the release of Perlman from personal liability under the Loan) and acceptance by the Purchaser.

3

(ii)     An assignment of the Membership Interests from Seller and acceptance of the Membership Interests by Purchaser, in the form attached hereto as Exhibit "B".

(iii) A certification by Seller that all representations set forth herein are true and correct as of the Closing Date

(iv) A certification by Seller certifying as to its organizational documents.

(v) A non-foreign affidavit of Seller (FIRPTA) confirming that Seller is not a foreign citizen.

(vi) A certification by Seller as to the then current rent roll and tenant security deposit list.

(vii) A notice to the tenants at the Property, in a form reasonably acceptable to Purchaser, advising them of the sale of the Property and/or change of management.

(vii) All original, complete tenant files.

(viii) A certification by Seller as to all of the outstanding obligations of Seller and/or the LLC as of the date of Closing.

(ix) A signed closing statement reflecting the Purchase Price and all adjustments referred to herein.

(x) An owner's title insurance policy which insures that the LLC owns the Property free and clear of any liens, except for the Permitted Exceptions.

(xi) UCC searches showing no encumbrances in the Membership Interests or Property other than to Lender.

(xii) To the extent assignable, an assignment of all warranties in effect issued in connection with the construction of the improvements on the Property.

4

(xiii) Such other documents and funds as are required to consummate this transaction in accordance with the terms of this Agreement.

    4. <u>DOCUMENTS TO BE DELIVERED BY PURCHASER AT CLOSING</u>.   At Closing, Purchaser shall deliver the following:

    (i) An acceptance of the assignment of the Membership Interests to Purchaser, in the form attached hereto as Exhibit "B".

    (ii) A signed closing statement reflecting the Purchase Price and all adjustments referred to herein.

    (iii) Such other documents and funds as are required to consummate this transaction in accordance with the terms of this Agreement.

    5. <u>TITLE EXAMINATION</u>.

    Title to the Property shall be good and marketable and free and clear of all liens, claims and encumbrances, excepting only the rights of parties in possession under and subject solely to the terms of the leases disclosed to Purchaser on the attached Rent Roll and the following permitted encumbrances (collectively, the "Permitted Encumbrances" and each a "Permitted Encumbrance"): (i) applicable zoning regulations and ordinances provided the same do not prohibit or impair use of the Property as currently operated and constructed or as contemplated by this Agreement; and (ii) such other non-monetary encumbrances of record as of the Effective Date in the applicable recording office with respect to such Property which are not objected to by Purchaser as Defects in accordance with this Agreement.  Seller will take no voluntary action to convey, nor will it permit the conveyance of any interest in the Property to anyone other than Purchaser.

Promptly after the Effective Date, Seller shall order from the Title Company and direct the Title Company promptly to deliver to Purchaser and Seller a preliminary title commitment, for an owner's policy of title insurance with respect to the Property, together with complete and legible copies of all instruments and documents referred to as exceptions to title (the "Title Commitment").

Not later than ten (10) days after receipt by Purchaser of the Title Commitment, Purchaser shall give Seller notice of any title exceptions or condition which Purchaser objects to within its sole discretion (collectively, the "Defects" and each a "Defect"). If, for any reason, Seller is unable or unwilling to take such actions as is required to cure (or otherwise address to the satisfaction of Purchaser or Title Company, as applicable) the Defects, Seller shall give Purchaser written notice thereof not later than five (5) business days after Purchaser's notice of objection (the "Seller Title Notice"), it being understood and agreed that the failure of Seller to give notice of its election within five (5) business days after Purchaser's notice of objection shall be deemed an election by Seller to remedy such matters not later than the Closing Date. If Seller shall be unable or unwilling to cure (or otherwise address to the satisfaction of Purchaser or Title Company, as applicable) any Defect as set forth above, then Purchaser may elect either (i) to terminate this Agreement, in which event Title Company shall pay the Deposit to Purchaser, or (ii) to consummate the transactions contemplated hereby, notwithstanding such Defect. Purchaser shall make any such election by written notice to Seller given on or prior to the tenth (10th) business day after the date on which the Seller's Title Notice is actually received by Purchaser. In the event of a termination, as described above, this Agreement

6

shall be of no further force and effect (except for the provisions hereof that expressly survive such termination).   Notwithstanding any term set forth herein to the contrary, (i) any lien on the Property securing the payment of a sum certain (a "Monetary Lien"), and (ii) any other non-monetary encumbrances placed against the Property after the Effective Date, shall be deemed a Defect, and Seller shall cause at or before Closing the Real Property and Improvements to be released or otherwise discharged from any such Monetary Lien or encumbrance, as the case may be, regardless of whether Purchaser asserts any such Defects in Purchaser's foregoing notice of Defects.

6. <u>INSPECTION OF PROPERTY BY PURCHASER.</u>

(a) Purchaser may have the Property inspected at Purchaser's expense.   The inspection may include all aspects of the Property, including but not limited to the structural, mechanical and environmental condition of the Property.   Purchaser may also inspect Seller's books and records for the Property. Any such inspections shall be performed in a manner consistent with this Agreement and shall be performed in such a manner to minimize any interference with the tenants at the Property.   Purchaser shall indemnify, defend and hold Seller harmless of, from and against all claims, costs, expenses, causes of action arising on account of a third party claim asserted against Seller, to persons and damage to any property and mechanics' liens or similar charges which may affect the Property, resulting directly from the entry onto the Property or work conducted thereon by or on behalf of Purchaser.   Prior to Purchaser's entry on the Property, Purchaser shall provide Seller with evidence of liability insurance to Seller's reasonable satisfaction.

7

All inspections and investigations shall be completed within twenty one (21) days of the date of this Agreement (the "Due Diligence Period").

(b) If the inspections or investigations reveal any conditions whatsoever which are not acceptable to Purchaser, in Purchaser's sole discretion, Purchaser may terminate this Contract for any reason or for no reason and the Title Company shall release the Deposit as follows:  $25,000.00 to the Seller and the balance of the Deposit in the amount of $175,000.00 to the Purchaser.  Notwithstanding the foregoing, the full deposit (without any $25,000.00 deduction) shall be returned to Purchaser if Purchaser terminates this Agreement due, at least in part, to an environmental condition.  Any termination of this Contract by Purchaser under this paragraph shall be no later than the end of the Due Diligence Period, or such right to terminate shall be deemed waived.  In the event Purchaser fails to so terminate, Purchaser shall no longer have the right to terminate under this Agreement pursuant to this paragraph.  .

(c)  <u>Opportunity to Inspect</u>.  Purchaser acknowledges and agrees, for Purchaser and Purchaser's successors and assigns, that (i) Purchaser is being given a reasonable opportunity to inspect and investigate the Property and all aspects relating thereto, either independently or through agents, contractors, engineers or consultants of Purchaser's choosing; (ii) Purchaser shall inspect and investigate the Property and engage such qualified agents, contractors, engineers or consultants as Purchaser deems necessary to make all appropriate inquiry regarding the condition of the Property and adjacent properties; and (iii) if Purchaser does not terminate this Agreement pursuant to this Article 6 then, except as otherwise expressly contained in sections 8, 10, and 18 of this

8

Agreement, at the Closing, Purchaser shall accept the Property in its then-existing condition on an "AS IS, WHERE IS, AND WITH ALL FAULTS" basis, with no right of set-off or reduction in the Purchase Price. Except as specifically provided in this Agreement, Seller has not made, does not make and specifically negates and disclaims any representations, warranties, promises, covenants, agreements or guaranties of any kind or character whatsoever, whether express or implied, oral or written, past, present or future, of, as to, concerning or with respect to the Property.

7. CLOSING AND OTHER COSTS. Seller shall pay for the cost of producing the Title Commitment and the cost of obtaining title insurance and 50% of the closing escrow fees. Seller shall also be responsible for any transfer fees which may be applicable. Purchaser shall be responsible for the cost of obtaining any survey, the assumption fee and all fees required by the Lender. All other costs, including but not limited to any title endorsements requested by Purchaser and attorneys' fees of its own counsel, shall be paid by the party incurring such costs.

8. RISK OF LOSS. Seller agrees to give Purchaser prompt written notice of any damage by fire or other similar casualty to the Property or any improvements located on the Property. Risk of loss shall remain with Seller until Closing. If, prior to Closing, the Property is are damaged or destroyed by fire or other similar casualty, the cost of which to abate exceeds $100,000.00, then Purchaser shall have the right to terminate this Agreement by written notice to Seller within 20 days after Purchaser has received the notice referred to above. If Purchaser does not elect to terminate this Agreement, then the Closing shall take place as provided herein without abatement of the Purchase Price,

9

except for a reduction equal to the amount of any insurance deductible, and any insurance proceeds received by Seller or payable to Seller shall be assigned and made payable to Purchaser.  If Purchaser elects to terminate this Agreement pursuant to this paragraph, then the Deposit shall be returned to Purchaser and thereafter this Agreement shall be null and void and of no further force or effect and neither party hereto shall have any further rights, duties, liabilities or obligations, at law or in equity, arising out of or relating to this Agreement.

9. <u>CONDEMNATION</u>.  Seller agrees to give Purchaser prompt notice of any actual or threatened taking or condemnation of the Property.  If prior to Closing, there shall occur or be pending any taking or condemnation of any portion of the Property, then Purchaser may terminate this Agreement by written notice to Seller within twenty (20) days after Purchaser has received the notice referred to above.  If Purchaser does not elect to terminate this Agreement, then the Closing shall take place as provided herein without abatement of the Purchase Price, and any condemnation awards which may be payable to Seller shall be assigned and made payable to Purchaser.  If Purchaser elects to terminate this Agreement pursuant to this paragraph 9, the Deposit shall be returned to Purchaser and thereafter this Agreement shall be null and void and of no further force or effect and neither party hereto shall have any further rights, duties, obligations or liabilities, at law or in equity, arising out of or relating to this Agreement.

10. <u>REPRESENTATIONS AND COVENANTS</u>.

(A) Seller, as of the Effective Date and as of the Closing Date represents, warrants and covenants to Purchaser as follows:

10

(a) Seller is an Illinois corporation, and the LLC is, and at the time of Closing will be, an Illinois limited liability company, duly organized and validly existing under the laws of the State of Illinois and is duly qualified to conduct its business in Kentucky and each other jurisdiction in which such qualification is required and has duly authorized the execution, delivery and performance of this Agreement and the transactions contemplated herein and upon its execution and delivery, this Agreement shall constitute the legal, valid and binding obligation of Seller, enforceable against it in accordance with its terms.

(b) Execution of all documents relating to this transaction and the full and complete performance of the provisions hereof will not violate or result in any breach of or constitute a default under any agreement, document or instrument (including corporate organizational documents, if appropriate) to which Seller or the LLC is a party or is bound.

(c) At the time of the Closing, Seller will be the sole owner of one hundred (100%) percent of all Membership Interests in the LLC.

(d) At the time of the Closing, the Membership Interests will be free and clear of all liens, encumbrances, pledges, interests or charges of any kind, except for in relation to the Loan.

(e) The LLC has good and marketable title in fee simple to the Property subject only to the Permitted Exceptions.

(f) Seller has the authority to enter into this Agreement and perform its obligations hereunder without obtaining any approvals or consent, except for the consent and approval of the Lender to the assumption of the Loan by Purchaser and of the

11

assignment of the Membership Interests to Purchaser.

(g) The LLC has, and at the time of the Closing the LLC will have, the right, power and authority to conduct its business and Seller has and will at the time of closing have the right, power and authority to execute and deliver this Agreement and all other instruments and documents contemplated hereby and to perform any and all acts necessary or desirable to consummate the transactions contemplated hereby.

(h) To the best of Seller's knowledge, no hazardous materials have been disposed of or generated on the Property, except in strict compliance with all laws and regulations. To the best of Seller's knowledge, the Property has not been used as a landfill or a waste dump, and no hazardous waste or other toxic substances, including, without limitation, asbestos, has been installed in, or produced, disposed or stored on the Property (other than customary and usual materials used in the ordinary operation of the Property and in accordance with applicable laws and label instructions).  To the best of Seller's knowledge, no activity which could have toxic results (i.e. resulting in liability under local, state or federal law), other than in accordance with all applicable laws, has been conducted on the Property and there is no proceeding or inquiry by any governmental authority or agency with respect thereto.

(i) To the best of Seller's knowledge, Seller and/or the LLC has obtained all necessary certificates, permits, approvals and licenses to construct and operate the Property as it is currently being operated, and such are still in effect, and all building permits and certificates of occupancy necessary to operate the Property as it is now being operated have been obtained, are still in effect and have not been revoked; and all

12

utilities necessary for the operation of the Property as it is currently being operated are installed and operating and connection charges have been paid for.

(j) Neither Seller nor the LLC has received from any governmental authority notice of any violation of any law, rule, regulation, permit, certificate, approval or license which has not heretofore been cured.

(k)    There is no existing, pending or known threatened, litigation, condemnation or sale in lieu thereof or rezoning, with respect to any portion of the Property.

(l)  As of the Closing Date the LLC will be the sole and absolute owner of the Property, free and clear of any liens or rights except for the Permitted Exceptions and the existing mortgage.

(m)  No person or entity has any right or option to purchase, right of first refusal or right of first offer to purchase, any portion of the Membership Interests or the Property and, except for the rights of tenants under the existing leases, there are no parties in possession of, or claiming any possession to, any portion of the Property as lessees, sublessees, tenants at sufferance, trespassers or otherwise.

(n) To the best of Seller's knowledge, there are no latent or material defects with respect to the improvements or the structural or mechanical systems at the Property. The Property consists of 228 units apartment units all of which are in habitable and rentable condition.

(o)  Neither Seller nor the LLC has received any written notice and Seller has no knowledge of any pending improvements, liens or special assessments to be

13

made against the Property or any part thereof by any governmental authority.

(p)   All taxes and assessments accrued, due or levied against Seller or the LLC will have been paid Closing.

(q)   All required tax returns have been filed by Seller or the LLC, or will at the time of the Closing be filed by Seller or the LLC...

(r)   There are no attachments, executions, assignments for the benefit of creditors, insolvency or voluntary or involuntary proceedings in bankruptcy pending, or, to Seller's knowledge, threatened against Seller, the LLC or the Property nor is any such proceeding contemplated by Seller or the LLC.

(s)   The Property is not the beneficiary of any tax exemption, abatement or similar mechanism.

(t)  Neither Seller and/or the LLC has not received any written notice from any insurer (i) that any policy of insurance will be cancelled or the premiums therefor increased by reason of any condition of or at the Property or (ii) or any required repairs to the Property. Seller shall maintain all insurance required by the Lender.

(u)   Between the date hereof and Closing, neither Seller nor the LLC shall take any action which could materially affect the Property or the Membership Interests.

(v)   Seller is not a foreign person and is a "United States Person" as such term is defined Section 7701 (a) (30) of the Internal Revenue code of 1986, as amended (the "Code").

(w)   Seller and the LLC are, and at the time of the Closing will be, solvent and the transaction contemplated herein will not render either Seller or the LLC insolvent.

14

(x) There are no proceedings at law or in equity before any court, grand jury, administrative agency or other investigative agency, bureau or instrumentality of any kind pending or, to the best of Seller's knowledge, threatened, against or affecting Seller, the LLC, the Membership Interests or the Property that (i) involve the validity or enforceability of this Agreement or any other instrument or document to be delivered by Seller pursuant hereto, (ii) enjoin or prevent or, to the best of Seller's knowledge, threaten to enjoin or prevent the performance of Seller's obligations hereunder or (iii) relate specifically to the Membership Interests, the Property or the title thereto;

(y) There are no pending or threatened actions, suits, investigations or proceedings at law or in equity before any court, grand jury, administrative agency or other investigative body of any governmental department, commission, board, agency, bureau or instrumentality concerning or affecting Seller, the LLC, the Membership Interests or the Property or any business conducted or operated in connection therewith or the assessment or payment of any taxes in connection therewith;

(z) Except for the tenancies shown on Exhibit "C" attached hereto (the "Leases"), there are no other leases, tenancies, licenses or other rights of occupancy or use for any portion of the Property.  Copies of the Leases furnished to Purchaser are true, correct and complete copies thereof and such Leases have not been modified or amended in any way nor has any term, provision or obligation of thereunder been waived. The Leases are in full force and effect and the Tenants are in actual possession. Tenants are not entitled to any concessions, free rent or occupancy, allowances, rebates or refunds that will extend beyond the Closing.  No rent or additional rent has been paid

15

thereunder in advance of the due date.  There is no breach or default or claim of breach or default by Seller, the LLC (as landlord) or by the Tenants in the keeping, observance or performance of any covenant, agreement, term, provision or condition contained therein. There is no option to purchase, right of first offer, right of first refusal or other provision granting the right to acquire the Property or any portion thereof or any right to terminate the Leases in the event of a sale of the Property; and all improvements, renovations, alterations and decorations or other work required to be made to the demised premises or the Property or required by the Leases have been completed in accordance therewith and paid for in full.  There are no service, employment or any other agreements relating to the Property, other than the Leases and those listed on Exhibit "D".

(aa)  There are no obligations to pay any commissions for the rental of any units at the Property.

(bb) The LLC at the time of the Closing will have no subsidiaries, and the LLC will not have conducted any business whatsoever other than ownership of the Property.

(cc)  The sole business of the LLC consists of owning and operating the Property.  The LLC has engaged in no other business since the time of its formation.

(dd) Attached hereto as Exhibit "E" is a complete list of all of Seller's and the LLC's employees engaged in the operation and maintenance at the Property, including all wages, free rent, if any, and any other benefits allowed to the employee.  As of the date of closing, the employee shall be paid in full and have been compensated for any vacation time.

16

(ee) There are no current tax appeals pending concerning the Property and none will be filed prior to the closing, without Purchaser's consent.

(ff) The Property consists of 228 legal apartment units, all of which are, to the best of Seller's knowledge, in compliance with the zoning laws of the municipality in which the Property is located.  Seller has not received any claims or complaints from any party that the Property is not in compliance with all zoning laws.

(gg) To the best of Seller's knowledge, there are no underground storage tanks at the Property.

(hh) The Loan and affecting the Property and its related Mortgage documents are in full force and effect, have not been modified or amended, have not been prepaid (either voluntary or involuntarily) and Seller has not received written notice as to any default under the terms of any of the loan documents affecting the Property or Seller.  Attached hereto as Exhibit "G" is a true copy of all Mortgage documents, including the most recent monthly statement and Seller represents that the current principal balance in the amount of $14,020,000.00 and the current escrow balances are true and accurate as of the date hereof and shall be true and accurate. subject to adjustment for monthly payments from the date hereof through the Closing Date

(ii)  The financial information that has been provided to the Purchaser by the Broker, the Seller, and the LLC which is attached hereto as Exhibit "H" is true and accurate.

(B) No representation or warranty contained herein or in any instrument or document provided to Purchaser pursuant to this Agreement contains or will contain any

17

untrue statement of material fact or omits or will omit to state a material fact in order to make the statements therein not misleading.

(C) Seller's representations, warranties and covenants in this Agreement shall survive Closing for a period of six (6) months.

(D) In the event of any action taken by either party arising under or through this Agreement, the non-prevailing party shall be liable to the prevailing party for any reasonable attorneys' fees and court costs.

11. <u>EXISTING LIABILITIES OF THE LLC.</u> It is expressly agreed by the parties that Purchaser is not assuming any liabilities of the LLC that exist on the Closing Date or that relate to any time period prior to the Closing Date, but shall be assuming all liability for the Loan, for those service contracts of the LLC that have been disclosed to the Purchaser, for taxes, pursuant to leases, and for utilities provided that all of the foregoing liabilities of the LLC arise from and after the Closing Date. Seller and Perlman hereby agree to indemnify, defend and hold Purchaser and the LLC harmless, including reasonable attorney's fees, for any liabilities, actions, notes, obligations, debts or any other financial liabilities, which are asserted against the LLC and/or Purchaser as the member of the LLC, to the extent that same were incurred or accrued prior to the Closing Date or that Seller fails to disclose such liabilities to the Purchaser prior to the Closing Date, provided however, Seller and/or Perlman shall have the right to contest in good faith any such liability, action, note, obligation, debt, or other financing liability and to defend same at their sole cost and expense. As security for the aforesaid indemnity, an escrow in the amount of $60,000.00 shall be held by the Title Company at the time of

18

closing.  The escrow may be released for payment of obligations of Seller that cannot be fully and finally adjusted between Seller and Purchaser until after the Closing Date.  In the event that any amount remains in escrow 60 days after the Closing Date, such balance shall be released to Seller provided that documents have been provided by Seller confirming that all payables due from Seller have been paid in full, which confirmation shall be in the form of Seller's statement detailing such payables and evidencing either the payment thereof or directing payment thereof by the Title Company.  This Seller's and Perlman's indemnity obligations under this paragraph shall survive the Closing.

12.  <u>PURCHASER'S DEFAULT</u>.  If Purchaser fails to perform any of its obligations under this Agreement, then Seller, as it sole and exclusive remedy, may terminate this Agreement by written notice to Purchaser.  Upon such termination, the Deposit, together with any interest earned thereon, shall be retained by Seller as Seller's sole and exclusive remedy as liquidated damages, and not as a penalty, and thereafter this Agreement shall be null and void and of no further force or effect and neither party hereto shall have any further rights, duties, obligations or liabilities at law or in equity, arising out of or relating to this Agreement.

13.  <u>SELLER'S DEFAULT</u>.  If Seller defaults in the performance of any of its obligations under this Agreement, Purchaser may (i) receive an immediate refund of the Deposit (with all accrued earnings) and terminate this Agreement or (ii) obtain specific performance of this Agreement.  Nothing herein shall limit Purchaser's or the LLC's right to recover its actual damages arising out of any breach of any representation, warranty, or covenants set forth herein.

19

14. <u>NOTICES</u>.  Any notice required or permitted to be given hereunder shall be deemed to be given (a) when hand-delivered or (b) 1 business day after pick-up for overnight delivery by Federal Express or similar overnight delivery service that provides a receipt of delivery, or (c) by facsimile, so long as it is followed by another form of notice, in any case, addressed to the party to be notified at is address first named in this Agreement, or to such other address as such party may from time to time designate to the other party.

15. <u>ADJUSTMENTS AT CLOSING</u>. Purchaser and Seller agree to adjust the following expenses as of 12:01 a.m. of the closing date: Rents, municipal water charges, sewer charges and taxes (which have been fully and finally assessed), interest and escrow deposits or other reserves under the Loan (as provided under Exhibit "G") that are to be reimbursed to Seller by the Purchaser,  and any service contracts or other continuing obligations of the LLC which are disclosed by Seller prior to Closing and not terminated at the time of Closing.  Purchaser or Seller may require that any person with a claim or right affecting the Property be paid off from the proceeds of this sale. All adjustments shall be made as of midnight of the day preceding the closing. Seller shall give Purchaser a credit for all tenant security deposits which tenants have paid, including interest to the extent required under any such lease or by applicable law.  All collected rent shall be adjusted at the closing and all rent collected after the closing shall first be applied to then current rent and then to arrears. Seller shall not deduct or appropriate any tenant security deposits for any tenant still in possession, and Seller has not done so for any tenants who are still in possession.

16.  <u>BROKER</u>.  Seller and Purchaser represent to each other than they have not dealt with any broker or finder concerning the transactions described in this Agreement other than Steve LaMotte, Jr. of CBRE (the "Broker") who shall be compensated by Seller pursuant to a separate agreement between Seller and the Broker.  Seller and Purchaser mutually agree to defend and hold each other harmless against any claims of any person or entity involving a breach of the representation contained in this paragraph to the extent of the damage caused the other party including, without limitation, reasonable attorneys' fees and costs of suit.

17.  <u>ASSIGNMENT</u>.  Purchaser shall not assign this Agreement without the prior written consent of Seller, which consent shall not be unreasonably withheld; provided, however, Seller's consent shall not be required for an assignment to another entity Purchaser shall have the right to assign this Contract, upon notification to Seller, to a partnership, corporation or limited liability company, of which Purchaser (or one of its principals) is a partner, shareholder or member.

18.  <u>OPERATIONS PRIOR TO CLOSING</u>. Seller shall not enter into any leases prior to the closing, unless the rent is for the fair market rental value, for a period of no more than one (1) year and other commercially reasonable terms and conditions.  Seller shall not grant any rent credits for any time period beyond the closing. Seller shall not enter into any other agreements affecting the Property, without Purchaser's prior written consent.  Prior to closing, Seller shall operate the Property in a competent, reasonable fashion.

19.  <u>SEVERABILITY</u>.  In the event that any provision of this Agreement shall be

21

determined to be void or unenforceable, such determination shall not affect the remaining provisions of this agreement.  This Agreement shall not be construed against the party preparing it but shall be construed as if all parties prepared this Agreement.

20.  THIRD PARTIES.  This Agreement shall not confer in favor of any third parties any rights whatsoever as third-party beneficiaries.

21.  COUNTERPARTS.  This Agreement may be executed in one or more counterparts, each of which shall constitute an original, but all of which taken together shall constitute one and the same documents.  A pdf or facsimile signature shall be deemed to be an original for purposes of making this Agreement or any amendment binding.

22.  MISCELLANEOUS.  This Agreement, together with the Exhibits hereto, is the entire Agreement between the parties with respect to the subject matter of this Agreement, and no waiver, alteration, modification, or interpretation of this Agreement shall be binding unless in writing and signed by both parties.  The Exhibits referred to in this Agreement are attached hereto and incorporated herein by reference.  This Agreement shall be binding upon and insure to the benefit of Purchaser and Seller and their respective legal and personal representatives, successors and assigns. This Agreement shall be construed and interpreted in accordance with the laws of the State of Kentucky.

23.  INTERPRETATION.  No provision of this Agreement is to be interpreted for or against either party because that party or that party's legal representative or counsel drafted such provision.

22

24. <u>LIKE KIND EXCHANGE</u>.

In the event that either Seller or Purchaser want the transaction to be contemplated hereunder to be a part of a tax free exchange, the other party shall cooperate with such tax free exchange and execute any requested documents, at no cost to the party conducting the tax free exchange.   Either party may assign its rights hereunder to a third party as part of such tax free exchange.

25. <u>ESCROW AGENT</u>.

(a) If the closing does not take place under this Contract by reason of the failure of either party to comply with its obligations hereunder, the Escrow Agent shall pay the Deposit to the party entitled to receive the Deposit in accordance with the applicable provisions of this Agreement.  The Escrow Agent shall notify the parties of its intent to pay over such Deposit and shall provide Seller or Purchaser, as the case may be, ten (10) days to dispute such payment.  If no such dispute is received in writing by the Escrow Agent within ten (10) days after the mailing by the Escrow Agent of its intent to pay over such Deposit, then the Escrow Agent may pay over the Deposit to the party which is indicated in the notice.

(b) It is agreed that the duties of the Escrow Agent are only as herein specifically provided, are purely ministerial in nature, and that the Escrow Agent shall incur no liability whatever except for willful misconduct or gross negligence, as long as the Escrow Agent has acted in good faith.

(c) The Escrow Agent will act as a stakeholder only.  If there is any dispute as to whether the Escrow Agent is obligated to deliver the Deposit or as to whom said Deposit

is to be delivered, the Escrow Agent shall hold same until its receipt of an authorization in writing, signed by Seller and Purchaser, directing the disposition of same, or in the absence of such authorization, the Escrow Agent shall hold the Deposit until the final determination of the rights of the parties in an appropriate proceeding.  If such written authorization is not given, or proceedings for such determination are not begun and diligently continued, the Escrow Agent may, but is not required to, bring an appropriate action or proceeding for leave to deposit the Deposit in Court pending such determination.

26. FURTHER ACTS.  Each party, upon the request of the other, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of, and the transactions contemplated by, this Agreement, including, without limitation, the provisions of Paragraph B of the Introduction.

Purchaser and Seller have duly executed and delivered this Agreement, as of the day and year first above written.

SELLER:

BRAHMS HOLDINGS, INC.

By: _Richard M Perlman_
Name: Richard M Perlman
Title: President

PURCHASER:
CS Acquisition Group, LLC

24

By: _____

Name: _____

Title: _____

With respect to the Indemnity in paragraph 11 hereof:

_____

Richard M. Perlman

25

By: _____

Name: _____

Title: _____

With respect to the Indemnity in paragraph 11 hereof:

_____

Richard M. Perlman

25

## LIST OF EXHIBITS

| | |
|---|---|
| Exhibit "A" | Legal Description |
| Exhibit "B" | Form of Assignment of Membership Interests |
| Exhibit "C" | Rent Roll |
| Exhibit "D" | Service Contracts |
| Exhibit "E" | Seller's Employees |
| Exhibit "F" | Existing Litigation |
| Exhibit "G" | Existing Mortgage Documents |
| Exhibit "H" | Financial Representations of Seller |